UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michelle Pohlen, | Civ. No. 22-2185 (PAM/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Alejandro N. Mayorkas, Secretary, United States Department of Homeland Security, | |
| Defendant. | |

This matter is before the Court on Defendant's partial Motion to Dismiss. For the following reasons, the Motion is granted.

**BACKGROUND**

Plaintiff Michelle Pohlen was an investigator with the Department of Homeland Security's investigative arm, Homeland Security Investigations ("HSI"), based in HSI's Rapid City, South Dakota, office. (Am. Compl. (Docket No. 12) ¶¶ 2, 22.) In March 2020, approximately a year after Pohlen became an investigator, she was sexually assaulted by another DHS employee while attending a training in Virginia. (Id. ¶ 24.) Pohlen began suffering panic attacks after the assault, and she claims that these panic attacks were exacerbated by viewing images of child pornography in the course of her assigned criminal investigations. (Id. ¶ 29.) In July 2020, Pohlen requested time off for mental-health treatment. (Id. ¶ 35.) She contends that her supervisor, Nicholas Saroff, who had been dismissive of her report regarding the sexual assault, expressed his disapproval of the request but eventually agreed. (Id. ¶ 36.)

In January 2021, Pohlen and Saroff had an argument about what Pohlen viewed as the office's insufficient response to Covid-19. (Id. ¶ 39.) Pohlen received a written counseling notice after the argument. (Id. ¶ 41.) When she asked Saroff whether she could protest the discipline and tell her side of the story to upper management, Saroff discouraged Pohlen from doing so in a manner she interpreted as threatening. (Id. ¶¶ 41-42.)

In February 2021, Pohlen asked to be allowed to telework from Minnesota, ostensibly as an accommodation for her mental-health issues. (Id. ¶ 43.) This request was denied. (Id. ¶ 44.) On March 11, 2021, Pohlen told Saroff that she had "come close to" suicide the previous evening because of the way he treated her. (Id. ¶ 45.) Saroff sent agents from the office to Pohlen's home later that day to retrieve Pohlen's service weapon and her personal weapons. (Id. ¶ 46.) Eight days later, Pohlen formally requested a transfer to St. Paul as an accommodation for her disabling mental-health condition, invoking the Rehabilitation Act. (Id. ¶ 47.) Before receiving a decision on her transfer request, however, Pohlen took FMLA leave to attend a 30-day inpatient mental-health treatment program. (Id. ¶ 48.) On her return to the office, she was assigned to administrative duties and required to work from home until she was "no longer a threat to [herself] or others." (Id. ¶¶ 53-54.) Pohlen did not ever return to in-person work with HSI. (Id. ¶ 70.)

In October 2021, with her transfer request still pending, Pohlen underwent an independent medical exam to determine whether she was fit for duty. (Id. ¶ 58.) The examiner found that Pohlen could perform the duties of an investigator, but that she should not be required to investigate sexual exploitation crimes involving minors. (Id. ¶ 59.) In December 2021, Pohlen's transfer accommodation request was denied. (Id. ¶ 60.)

Pohlen filed a discrimination complaint with the DHS EEO office on January 12, 2022. (Id. ¶ 64.) Later in January, Pohlen received a "Proposal to Remove," notifying her that the department was considering terminating her employment because she was unable to "perform the full functions of [her] job" given her inability to investigate child exploitation crimes. (Id. ¶ 65.) Pohlen again requested a transfer to another position within DHS, but that request "came to nothing." (Id. ¶ 69.)

In March 2021, Pohlen apparently filed a report regarding the March 2020 sexual assault with DHS's Office of Professional Responsibility. (Docket No. 19 at 22 n.3.) She did not learn the results of the investigation until September 2022. (Id.) Neither Pohlen's pleading nor her memorandum indicates the outcome of the investigation. She also does not raise any specific claim regarding this investigation in the Amended Complaint, although she argues in her opposition to the pending Motion that the delay in investigating and concluding her report of the sexual assault was discriminatory.

Pohlen filed this lawsuit on September 8, 2022, and was fired from DHS on September 29, 2022. (Id. ¶¶ 79-80.) Her Amended Complaint, which includes claims regarding her termination, contains four counts. Count I alleges gender discrimination and hostile work environment in violation of Title VII. Count II asserts retaliation in violation of Title VII. Count III alleges disability discrimination in violation of the Rehabilitation Act, 42 U.S.C. § 12112(a). And Count IV alleges retaliation in violation of the Rehabilitation Act.

DHS moves to dismiss Pohlen's claims in part, arguing that she failed to exhaust her administrative remedies with respect to most of the adverse actions about which she complains in the Amended Complaint.

**DISCUSSION**

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in Pohlen's favor. Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. In assessing the sufficiency of the complaint, the Court may disregard legal conclusions that are couched as factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

**A.     Exhaustion**

A federal employee is required to bring an administrative charge of discrimination before pursuing any litigation related to that alleged discrimination. See 29 C.F.R. §§ 1614.105, 1614.106. The exhaustion process requires the employee to "initiate contact" with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." Id. § 1614.105(a)(1). If the employee's complaint is not resolved, the employee must file a formal EEO complaint with her agency within 15 days. Id. § 1614.106(b).

4

1. **Termination**

DHS contends that any allegedly adverse employment actions that occurred after Pohlen filed her EEO complaint in January 2022, including her termination, are unexhausted and cannot form the basis of this lawsuit. Pohlen argues that her termination, which started with the Proposal to Remove issued two weeks after she filed the EEO complaint, "flowed directly from" the alleged failure to accommodate her disability that she complained about in the EEO complaint. She notes that the EEO's "Statement of Claims Accepted for Investigation" listed the Proposal to Remove as an "incident" to be investigated. (Yarborough Decl. Ex. C (Docket No. 16-3).)[1] And the final notice of her termination contained the same justification as the proposal: that Pohlen could not perform the essential functions of her job. (See id. Exs. D, E (Docket Nos. 16-4, 16-5).)

An employee is required to file a separate charge of discrimination for each unlawful employment practice about which she raises claims. Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 851 (8th Cir. 2012); see also 29 C.F.R. § 1614.105(a)(1) ("[I]n the case of a personnel action" a federal employee must "initiate contact with a[n EEO] Counselor . . . within 45 days of the effective date of the action."). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (quotation omitted). Termination is a discrete event, and Pohlen's failure to instigate

---

[1] Although a motion to dismiss is generally restricted to the allegations in the pleadings, Pohlen refers to documents attached to DHS's declaration and thus does not appear to take issue with DHS's assertion that those documents are public records directly referenced in the Amended Complaint and are therefore properly considered in this Motion.

5

another administrative process after her termination means that any claim that her termination was discriminatory is barred.  See Hutson v. Wells Dairy, Inc., 578 F.3d 823, 826 (8th Cir. 2009) ("A termination is a discrete act, not a continuing violation.").

An administrative charge serves an important purpose:  "The reason for requiring the pursuit of administrative remedies first is to provide the [EEO] with an initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation." Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005).  Pohlen's failure to file an EEO charge regarding her termination deprived DHS of the opportunity to administratively evaluate her claim and potentially resolve it short of litigation.

Pohlen's argument that her termination is so related to the initial Proposal to Remove as to constitute the same decision is unavailing.  She relies heavily on an opinion finding that a plaintiff who charged a failure to accommodate also exhausted his remedies as to a claim for discriminatory termination.  Weatherly v. Ford Motor Co., 994 F.3d 940, 944 (8th Cir. 2021).  Weatherly is not on point, however, because in that case, the EEOC charge at issue was filed after the employee's termination.  The charge alleged that the employer terminated Weatherly for missing work because of his disability, although the charge stated that the termination constituted an alleged failure to accommodate the disability and did not reference the termination itself as discriminatory. Id. at 945. Calling exhaustion a "close call," the Eighth Circuit determined that an investigation into the employee's termination "could reasonably be expected to grow" out of his EEOC charge regarding the alleged failure to accommodate.  Id. at 946; see also Wedow v. City of Kansas

6

City, 442 F.3d 661, 672 (8th Cir. 2006) (Courts should consider claims specifically raised and those that are "like or reasonably related to the administrative charges that were timely brought.") (quotation omitted). Thus, the Eighth Circuit concluded that the plaintiff had sufficiently exhausted his remedies as to his claim of discriminatory termination. Weatherly, 994 F.3d at 946.

Pohlen's EEO charge was filed nine months before her termination and two weeks before she received the Proposal to Remove. The proposal did not terminate Pohlen's employment. The proposal may have been an adverse employment action in itself, but the proposal is not the same adverse employment action as Pohlen's termination. Pohlen cannot bring any claims regarding her termination because, as she concedes, she did not exhaust her administrative remedies regarding that termination. See Moses v. Dassault Falcon Jet-Wilmington Corp, 894 F.3d 911, 920 (8th Cir. 2018) (Because plaintiff "never filed a new [EEO] charge for the termination . . . all federal claims related to the termination are beyond the scope of the [EEO] charge" and were properly dismissed.). Her claims in this lawsuit are limited to the adverse actions and harassing conduct included in the EEO's Statement of Claims, to the extent those actions and conduct are otherwise timely.

**2.      Hostile Work Environment**

      **a.      Continuing Violations**

DHS also contends that Pohlen cannot rely on any conduct that occurred before October 23, 2021—45 days before she initially contacted the EEO—as support for her claims. Pohlen maintains that this conduct is part of a continuing violation and is properly considered. In the alternative, she asks the Court to apply equitable tolling to reach conduct

7

before the 45-day limitations period. And she asserts that all of the conduct described in the Amended Complaint, from March 2020 to the date of her termination, is properly included as relevant background even if not part of a continuing violation or subject to equitable tolling.

The continuing-violations theory applies only to claims of a hostile work environment and cannot save Pohlen's claims of discrimination that purport to rely on conduct before October 23, 2021. Morgan, 536 U.S. at 122 (noting that claims arising out of "discrete discriminatory or retaliatory acts" must be filed within the statutory time period, but "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period"). And although Pohlen argues that untimely conduct is "background for her claims," background facts do not suffice to make her claims timely. She must plead an adverse action that occurred within the 45-day period to support her claims of discrimination and retaliation. Aside from the denial of her request for a transfer and the Proposal to Remove, she has failed to plead any such adverse action.

Actions from outside the limitations period can be used to establish a hostile-work-environment claim under a continuing-violations theory. Morgan, 536 U.S. at 117. But to plead the existence of a timely claim using the continuing violations theory, Pohlen must allege "an act contributing to the claim [that] occurs within the filing period." Id. She does not allege any such act. She claims that the denial of her transfer request was an act contributing to a hostile work environment. But that decision was made by an individual

in the DHS administration who does not appear in any of her allegations regarding the hostile work environment. (See Yarborough Decl. Ex. B (Docket No. 16-2) at 5 (Plaintiff's initial EEO complaint, with handwritten narrative alleging that "ASAC Joshua Goldberg" denied her request for transfer to St. Paul).) Pohlen does not explain how an administrative decision such as this could be harassing for purposes of a hostile-work-environment claim.

Pohlen also claims "failure to engage in the interactive process" and termination as events that occurred within the limitations period. But she does not mention any alleged "failure to engage in the interactive process" in the Amended Complaint. And as discussed above, her termination is not an event that occurred within the limitations period, so it cannot support the application of the continuing-violations theory.

Moreover, the denial of a transfer request or a termination decision may be the result of a hostile work environment, but these actions cannot demonstrate the conduct, remarks, or other forms of harassment that are required for a hostile-work-environment claim. See Gonzalez v. City of Minneapolis, 267 F. Supp. 2d 1004, 1015 (D. Minn. 2003) (noting that a prima facie case of hostile work environment requires "the occurrence of unwelcome harassment," that "the harassment affected a term, condition, or privilege of employment," and that the harassment was "severe and pervasive, both objectively and subjectively"). Harassment is conduct—words and actions that an employee finds unwelcome, that is, "uninvited and offensive." Quick v. Donaldson Co., 90 F.3d 1372, 1378 (8th Cir. 1996) (quotation omitted); see also Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 618 (8th Cir. 2007) (defining actionable harassment as conduct "so intimidating, offensive, or

hostile that it poisoned the work environment") (quotation omitted). Termination or refusal to transfer are adverse employment actions, not offensive conduct, and are therefore not actionable "harassment." See Mahler v. First Dakota Title Ltd. P'ship, 931 F.3d 799, 805-07 (8th Cir. 2019) (discussing claimed harassing conduct in conjunction with employee's hostile-environment claim and termination in conjunction with employee's retaliation claim).

Absent an allegedly harassing act that occurred during the 45-day period before she filed her initial complaint, Pohlen cannot rely on the continuing-violations theory to save her untimely allegations. She has not alleged any timely harassing conduct, and her hostile-work-environment claims are therefore untimely.

### b.     Equitable tolling

Pohlen argues in the alternative that equitable tolling should apply to save her untimely hostile-environment allegations from the 45-day limitations period. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990) (determining that equitable tolling applied in employment-discrimination claim against the government). But "[f]ederal courts have typically extended equitable relief only sparingly." Id. at 96.

Equitable tolling "provides a 'limited and infrequent form of relief' appropriate only where (1) the plaintiff pursued her claims diligently but (2) some extraordinary circumstance 'stood in [her] way.'" Brinkman v. Nasseff Mech. Contractors Inc., 251 F. Supp. 3d 1266, 1274 (D. Minn. 2017) (Kyle, J.) (quoting Smithrud v. City of St. Paul, 746 F.3d 391, 396 (8th Cir. 2014)). A "'garden variety claim of excusable neglect,'. . . fail[s]

to meet the standard for equitable tolling." Frazier v. Vilsack, 419 F. App'x 686, 689 (8th Cir. 2011) (quoting Irwin, 498 U.S. at 96).

Pohlen has not established that any extraordinary circumstance prevented her from filing another EEO complaint after she was terminated. "As a general rule, equitable tolling is a remedy reserved for circumstances that are truly beyond the control of the plaintiff." Shempert v. Harwick Chem. Corp., 151 F.3d 793, 797-98 (8th Cir. 1998) (quotation omitted). Pohlen has not alleged any such circumstances here and equitable tolling does not apply.

**B.    Request to Amend**

Finally, Pohlen asks that she be allowed to amend if the Court finds any of her claims subject to dismissal. Putting aside that any amendment could not make her untimely claims timely, it is not appropriate to request permission to amend in this fashion. See Thunander v. Uponor, Inc., 887 F. Supp. 2d 850, 879 (D. Minn. 2012) (Nelson, J.) (denying motion to amend "submitted as an alternative argument" in party's brief, rather than as a properly submitted and noticed motion under D. Minn. L.R. 15(b)). Pohlen's alternative request to amend is denied.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1.    Defendant's partial Motion to Dismiss (Docket No. 13) is **GRANTED**;

2. Plaintiff's hostile-work-environment claims and any discrimination or retaliation claims arising out of actions taken before October 23, 2021, or after the actions listed in the EEO's Statement of Claims, are **DISMISSED**.

Dated:  August 28, 2023                          *Paul A. Magnuson*
                                                 Paul A. Magnuson
                                                 United States District Court Judge