UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michelle Pohlen, | Civ. No. 22-2185 (PAM/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Alejandro N. Mayorkas, Secretary, United States Department of Homeland Security, | |
| Defendant. | |

This matter is before the Court on Defendant's Motion for Summary Judgment. For the following reasons, the Motion is granted.

**BACKGROUND**

Plaintiff Michelle Pohlen was an investigator with the Department of Homeland Security's investigative arm, Homeland Security Investigations ("HSI"), stationed in Rapid City, South Dakota.[1] She asserts that after a March 2020 sexual assault perpetrated by another HSI employee, she began suffering panic attacks and other mental-health issues. She alleged in her complaint that her condition was exacerbated by having to view images of child pornography in the course of her assigned criminal investigations. (Am. Compl. (Docket No. 12) ¶ 29.)

On March 11, 2021, Pohlen called her supervisor and told him that she had come close to suicide the previous evening because of the way he treated her. (Id. ¶ 45.) As DHS policy required, Pohlen then had to surrender her weapon and her credentials. Pohlen

---

[1] A more complete recitation of the factual background is found in the Order granting Defendant's partial Motion to Dismiss. (Docket No. 23.)

requested FMLA leave to attend residential treatment, and also asked for a transfer to St. Paul, Minnesota, as a "reasonable accommodation" for her mental-health issues. (Id. ¶¶ 47, 48.) At that time, Pohlen did not request that HSI remove her from investigating sex crimes.

In October 2021, as part of her request for an accommodation, Pohlen underwent an independent psychological exam to determine whether she was fit for duty. (Holt Decl. Ex. E (Docket No. 42).) The examiner found that Pohlen could perform the duties of an investigator, but that she should not be required to "investigat[e] sexual crimes such as child exploitation in the future due to her own past sexual trauma." (Id. at 2.) Pohlen amended her accommodation request in January 2022 asking that she "not be assigned to sexual crimes due to my own past sexual trauma."[2] (Docket No. 41-9.)

Because HSI considers the ability to investigate sex crimes an essential job responsibility, HSI determined that Pohlen was no longer qualified to do the job, and denied her transfer request. (Holt. Decl. Ex. F (Docket No. 41-5).) HSI offered Pohlen a position in Duluth, Minnesota, that would not have required her to investigate sex crimes (id. at 2), but she refused. HSI subsequently terminated Pohlen's employment.

Pohlen filed this lawsuit in September 2022, shortly before her termination. Her Amended Complaint initially raised four claims: hostile work environment and retaliation in violation of Title VII, 42 U.S.C. § 2000e et seq., and disability discrimination and

---

[2] Pohlen also requested reassignment to a Federal Air Marshal position in Edina, MN, but as Defendant points out, the Air Marshals are a different division to which HSI has no authority to reassign its employees.

retaliation in violation of the Rehabilitation Act, 42 U.S.C. § 12112(a).  After the Court granted Defendant's partial motion to dismiss, the only claim that remains for resolution is Pohlen's claim that HSI failed to accommodate her disability in violation of the Rehabilitation Act.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party."  Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

At issue in this Motion is whether Pohlen can establish the prima facie elements of her Rehabilitation Act claim that Defendant failed to accommodate her disability. Defendant asks the Court to determine that Pohlen was not a qualified individual under the Rehabilitation Act as a matter of law.  Pohlen asserts that this determination is fact-based and is premature given that discovery is in its early stages.

The Rehabilitation Act, similar to the Americans with Disabilities Act ("ADA"),[3] prohibits discrimination against an "otherwise qualified individual with a disability . . . , solely by reason of her or his disability." 29 U.S.C. § 794. Discrimination under the Act encompasses an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). Thus, an essential element of a disability-discrimination claim is that the aggrieved employee be "otherwise qualified" for the position. To be so qualified, the employee must "(1) possess the requisite skill, education, experience, and training for [her] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003) (internal quotation omitted); see also 42 U.S.C. § 12111(8).

The question here is whether Pohlen could avoid investigating sex crimes and still perform the essential functions of her job. The regulations provide several factors to consider when determining whether a function is essential:

> (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). "Essential functions of a position are the fundamental duties of

---

[3] "[D]ecisions interpreting either the ADA or the Rehabilitation Act are applicable and interchangeable to claims under each statute." Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013) (quotation omitted).

4

the job, but not its marginal functions and 'much of the information which determines those essential functions lies uniquely with the employer.'" Hill v. Walker, 737 F.3d 1209, 1217 (8th Cir. 2013) (quoting Kallail v. Alliant Energy Corp. Servs., Inc., 691 F.3d 925, 930 (8th Cir. 2012)) (internal citation omitted). Indeed, "the employer's judgment [as to what constitutes the essential functions of a job] is considered 'highly probative.'" Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 786 (8th Cir. 2004) (quoting Alexander v. The Northland Inn, 321 F.3d 723, 727 (8th Cir. 2003).

Defendant has proffered evidence that it considered the ability to investigate sex crimes an essential function. Defendant argues that the job description for the position indicated as such by citing to the job requirements of familiarity with and investigations of violations of the federal criminal code, which includes sex crimes. (Brown Decl. Ex. A (Docket No. 38-1); see also Holt Decl. Ex. A (Docket No. 41-1) at 3 (describing investigator's responsibility to investigate "human trafficking and smuggling"); id. at 7 (investigators are required to have "knowledge of a wide-range of criminal statutes" including those prohibiting sex trafficking).) The job description for HSI investigator provides that investigators are

> responsible for the conduct of criminal investigations that protect the United States (U.S.) against terrorism, criminals and criminal organizations that threaten the nation's safety and national security, combatting transnational criminal enterprises that seek to exploit America's legitimate trade, travel and financial systems; and upholding and enforcing U.S. customs and immigration laws at and beyond our nation's borders.

(Holt Aff. Ex. A at 2.) This broad description undoubtedly encompasses investigating sex trafficking. And Pohlen concedes that she investigated sex crimes as part of her job duties,

5

when she estimated that investigating sex crimes "constituted less than 5% of my overall investigative workload." (Docket No. 48 ¶ 10 (emphases omitted).)

Pohlen first responds that she could investigate sex crimes but sought only to avoid looking at child pornography.[4] Second, she asserts that she requires additional discovery to determine the amount of time other investigators in her office spent investigating sex crimes, and the work experience of others in the same job with regard to the investigation of sex crimes. Her attorney filed an affidavit under Fed. R. Civ. P. 56(d) attesting to the discovery Pohlen contends is necessary before summary judgment may be entered. (Docket No. 47.)

The record belies Pohlen's first contention that she was not precluded from investigating sex crimes. The independent psychological examiner concluded that Pohlen should not be required to "investigat[e] sexual crimes such as child exploitation in the future due to her own past sexual trauma." (Holt Aff. Ex. E.) When Pohlen inquired of the examiner whether he meant all sex crimes or just child pornography, he reiterated that he "does not recommend [Pohlen] be assigned to sexual crimes." (Docket No. 41-6.) And Pohlen herself amended her accommodation request "requesting not to be assigned to sexual crimes" (Docket No. 41-9), not merely to be exempt from viewing child pornography.

Pohlen underwent another psychological examination in January 2023 to support her allegations in this lawsuit. This psychologist reiterated that "investigations of sex

---

[4] Pohlen notes that HSI has a program allowing its investigators to opt out of viewing child pornography.

crimes would certainly exacerbate [Pohlen's] conditions and reactivate her PTSD." (Docket No. 39 at 10.)  Indeed, the psychologist opined that "[t]hese types of work activities would be disqualifying because it would risk reactivating [Pohlen's] trauma." (Id.)  Pohlen's expressed willingness to investigate sex crimes is beside the point.  See Denson v. Steak 'n Shake, Inc., 910 F.3d 368, 371 (8th Cir. 2018) (noting that "an employee's subjective belief that he or she can perform the essential functions of the job is irrelevant"); see also Alexander, 321 F.3d at 727 (8th Cir. 2003) (finding that "[t]he ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden").  There is no genuine issue of fact as to whether Pohlen could investigate sex crimes; the only evidence in the record is that she could not do so.[5]

The record is also clear that the investigation of sex crimes is an essential function of Pohlen's position, and no further discovery will change that conclusion.  "A job function may be essential if the reason the position exists is to perform that function."  Hill, 737 F.3d at 1217.  The facts of Hill are instructive.  Hill, a case worker in the Arkansas Department of Human Services, requested that the Department reassign one of her cases because she was experiencing "frequent anxiety and panic attacks" as a result of that client's harassment and verbal abuse.  Id. at 1214.  When the Department refused, Hill

---

[5] Although Pohlen's Rule 56(d) affidavit claims that Defendant's interpretation of the independent psychological examiner's report is a matter that warrants further discovery, the report was not ambiguous, and both the initial examining psychologist and Pohlen's expert psychologist confirm the report's opinion regarding Pohlen's inability to investigate sex crimes.  Further discovery on this issue is unnecessary.

7

brought suit under the ADA and Rehabilitation Act. The Eighth Circuit Court of Appeals affirmed the grant of summary judgment in favor of the employer, finding that Hill was not a "qualified individual" under the statute. Although Hill had requested only to be removed from a single particularly stressful case, the Court of Appeals determined that "Hill's suggestion that the Department must carve out her work on one stressful case and deem it a nonessential function is inconsistent with the nature of the position." Id. at 1217. And "[b]ecause removing Hill from the case would have required assumption of that function by another Family Service Worker, removal was not a reasonable accommodation." Id. The Court therefore found that the "handling of stressful cases, including this particular case, was an essential function of [Hill's] position." Id.

The same result obtains here: HSI cannot "carve out" work on sex crimes for its investigators. An employer "need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee." Kallail, 691 F.3d at 932 (internal quotation omitted). And although Pohlen insists that she spent very little time investigating sex crimes during her tenure as an investigator, her "specific personal experience is of no consequence in the essential functions equation." See Dropinski v. Douglas Cnty., Neb., 298 F.3d 704, 709 (8th Cir. 2002). As Defendant points out, an investigator must be able to investigate all aspects of federal crimes wherever that investigation leads. If, for example, a drug-trafficking conspiracy is discovered to have a sex-trafficking component, the assigned investigator must investigate that sex trafficking. Reassigning a case mid-stream is not feasible or tenable. (See Brown Decl. Ex. A at 6 (job description noting that investigators "focus on suspected major offenses or violations of Federal laws where the

8

investigative assignment requires an extended period of time, i.e., days, weeks, or months, for completion").)

HSI offered Pohlen a transfer to a different job that would have accommodated her stated inability to investigate sex crimes. But similar to Hill, Pohlen refused to accept any accommodation other than being excused from investigating sex crimes. As such, she "cannot show that she was able to perform the essential function of her position with a reasonable accommodation," and her claim fails. Hill, 737 F.3d at 1217-18. More discovery will not change this conclusion.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion for Summary Judgment (Docket No. 35) is **GRANTED**; and

2. This matter is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:      February 22, 2024                   *s/Paul A. Magnuson*
                                                Paul A. Magnuson
                                                United States District Court Judge